### FLEXLUME SIGN CO., Inc., v. OPALITE SIGN CO.

### SAME v. MID–CITY ELECTRICAL SERVICE CO.

(Circuit Court of Appeals, Seventh Circuit. March 30, 1923. Rehearing Denied September 18, 1923.)

#### Nos. 3031, 3032.

1. Patents ⬡⇒328—1,224,253, for illuminated signs, held valid in part, and invalid in part.

Claims 1–7 and 11 of the Wiley and Hough patent, No. 1,224,253, for double-faced illuminated sign, with sign characters on opposite sides, each formed of plate of opal or milk glass, *held* valid, but claims 8, 9, and 10, invalid for want of invention.

2. Patents ⬡⇒328—1,146,910, for process of making illuminated signs held invalid.

The Wiley and Hough patent, No. 1,146,910, for process of making relief glass sign characters for illuminated signs, consisting in effect of heating glass over die and filling the die, *held* invalid for want of invention, in view of the prior art.

3. Trade-marks and trade-names and unfair competition ⬡⇒59(5)—Trade-mark held not infringed.

"Oplex," used as trade-mark for opal glass, is not infringed by use of word "opalite."

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

---

Suits by the Flexlume Sign Company, Inc., against the Opalite Sign Company and against the Mid-City Electrical Service Company. From a decree for defendant in each case, plaintiff appeals. Reversed, with directions.

Edward Rector and Comfort S. Butler, both of Chicago, Ill., for appellant.

Russell Wiles, of Chicago, Ill., for appellees.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellant instituted two suits to restrain the infringement of certain patents and to recover damages for unfair competition. It also sought to restrain the infringement of its trade-mark "Oplex." The two suits, though separate, were tried together in the District Court; both defenses being conducted by the Opalite Sign Company. We will dispose of both in one opinion.

The infringement of three patents was charged in the complaint, but only two are here urged, No. 1,146,910 and No. 1,224,253, both to Wiley and Hough. The former is a process patent, while the latter covers a product. Both patents were held invalid by the District Judge, who also found the process patent was not infringed.

[1] The combination patent covers a double-faced sign, usable day or night, and susceptible of illumination. As illumination is almost universally by electricity, patentee sought to reduce the consumption of electrical current, to lessen the cost of lamp maintenance, and to provide the maximum amount of attraction. The patentee sets forth his purpose and object in the following language:

"This invention has reference to illuminated signs, and its object is to provide a sign structure with light-transmitting characters, wherein the characters, which may be of peculiar construction, are efficiently mounted and are so related to the light-giving elements of the signs that the efficiency of illumination is materially increased.

"The present invention is particularly adapted to that kind of illuminated sign known as a double-face sign, and the light-giving units are arranged in most part so as to be hidden from direct view through the sign character strokes, while advantage is taken of the reflecting qualities of the inner faces of the character or characters on one face of the sign to increase the illumination of the strokes of the character or characters on the other face of the sign, whereby there is obtained increased illumination, even distribution of illumination, and uniformity of illumination; glare spots being to a commensurate extent avoided.

"The signs of the present invention have the sign characters produced on plates of opal or milk glass, with the character strokes in relief; the glass employed having a particularly brilliant reflecting surface. It will be understood, however, that any light-transmitting material other than glass, but having characteristics whereby the effects produced by the present invention are obtained, may be employed."

The claims divide themselves into two classes; the controversy over the broader claims, of course, being more important. Claims 8, 9, and 10, the narrower ones, are of little importance, if the broader claims are sustained. This patent illustrates the difficulty of an easy solution of any patent case where the patent solicitor, in his anxiety to protect anything and everything, covers every conceivable structure that embodies the inventor's product.

We will direct our attention chiefly to the broader claims, and will not take up individually and in detail each and every one of the narrower claims. Claim 7 is descriptive, and may be divided into its seven elements:

"Claim 7. A double-face sign having (1) sign characters on opposite sides, (2) each formed of a plate of opal or milk glass, with (3) sign characters in relief on one face thereof, and with (4) the other face constituting a reflector of light; (5) each sign character having its exterior, except where provided with character strokes, covered with opaque material; and (6) light emitting units within the sign, situated with respect to the character strokes to direct light therethrough, and to direct light upon the reflecting surfaces of each plate, for the reflection of such light by said plate across the sign to the opposite side thereof, and through the character strokes there located, whereby the direct illumination from the light units is reinforced by the light reflected from the plates; (7) said places being of a density and light diffusive character to prevent concentration of the direct light of the light-giving units, when the latter are directly viewed through the character strokes."

This is a combination claim, and the argument was illuminated by demonstrations of the apparatus, and results flowing therefrom have cleared the case of some of its doubt. That patentee succeeded in attaining certain desired results was satisfactorily demonstrated. Speaking of the individual elements, it is urged:

(1) "Sign characters on opposite sides," provide for a double-faced sign.

(2) Each character is "formed of a plate of opal or milk glass." The character is a separate plate, which, it is claimed, is advantageous, in that it reduces the cost of replacement, and makes possible a larger and more available stock. It also makes possible the easy substitution of letters of varying sizes. The plate is made of opal or milk glass, for which quality special virtues are claimed, because "the color characteristic of opal or milk glass is a component or constituent of the glass itself."

(3) "Sign characters in relief on one face thereof." Some advance in the art is claimed, because of the use of a relief letter formed of opal or milk glass; it being asserted that the raised side letter gives increased legibility and the combination is particularly valuable for day and night service.

(4) "The other face, constituting a reflector of light," suggests its own possible value, and the utilization of the material which form the letters themselves for reflecting purposes is unique.

(5) The utilization of the fifth element is to more boldly bring out the letters, but leaves the interior an unimpaired reflecting surface.

(6) Element 6 is, of course, essential to the successful utilization of the other elements.

(7) Element 7 prevents the electric lights being seen through the plate, and gives a more uniform glow throughout the entire bar.

That the combination producing such results as are here claimed (and established both by testimony of witnesses and by a practical demonstration in the court room) constitutes invention must be conceded, unless the prior art either anticipates the structure or so prescribes the field of legitimate endeavor as to justify a finding of noninvention.

This is the position counsel for appellee frankly takes. To borrow his own words:

"The defense to this patent is noninvention, in view of the prior art. It is therefore essential to know the art. The art is of three parts: First, double-faced signs, using white translucent glass, but without raised letters; second, raised glass letter signs, single and double-faced; and, third, raised white glass letters identical with plaintiff's and defendant's. Broadly speaking, defendant's position is that, since 95 per cent. of all illuminated signs are double-faced, it is obvious to use all sorts of letters in double-faced signs, and that the disclosure of a translucent sign letter is ipso facto a recommendation of its use in double-faced signs, as other letters are used."

We cannot accept this position so tersely put. Grant that the prior art disclosed structures designated by counsel as first, second, and third. But these elements do not represent all that is found in the patent in suit. Various single advantageous elements, either as single factors or as coacting agencies, are present, and they all aim and tend to produce the desired end. Nor are we prepared to say (if such were decisive of the case) that, with the art represented as stated in counsel's first paragraph, it would merely evidence mechanical skill to make the advance which appellant made in form. The patentees have constructed a combination, unanticipted by the prior art. Its operation resulted in a step forward. It matters not whether this has been accomplished by the inventors' rearranging old elements, or injecting a new element into the old combination. The product of their efforts was new, and we do not think it represented merely mechanical skill.

Respecting the narrower claims, 8, 9, and 10, we will quote but one:

"10. An illuminated sign, comprising a casing having openings therein, doors mounted in said openings, and each comprising a sheet of metal cut out in conformity with the outline of a sign character, a plate of light-transmitting material with a sign character produced thereon in relief, and holding members applied to the marginal portions of the sheet and to the door, with the inner face of the sheet, except where engaged by the holding members, wholly exposed."

Our discussion of the previous claims makes any elaborate statement of the reasons for our conclusion unnecessary. The persuasive facts determinative of invention represented by claim 7 are absent. In each of these three narrow claims the inventor was dealing with a single-faced sign; at least, the claim is not limited to a double-faced sign. No reflection of light occurred, and in a much lesser degree there was diffusion of light. If we were to hold these claims valid, it must be by virtue of the element:

"The holding members applied to the marginal portions of the sheet and to the door, with the inner face of the sheet, except where engaged by the holding member, wholly exposed."

We cannot give to this element any such importance.

[2] Concerning process patent No. 1,146,910, little need be said. Patentee sets forth the object of his patent in the following language:

"This invention has reference to improvement in the making of glass letters, and its object is to produce glass letters especially adapted for signs intended to be illuminated at night from a source of light at the rear of the sign, and to be made brilliant in daylight by light reflected from the letters."

Claim 2, typical of the claims involved, reads as follows:

"Claim 2. The method of producing relief glass sign characters for illuminated signs, which consists in (1) providing a sheet of glass (of) substantially even thickness throughout; (2) placing such sheet upon a die having a supporting surface for the glass sheet, and portions sunken below such surface whereby the die delineates a sign character; (3) heating the glass sheet to soften it; and (4) locally and progressively applying pressure to the glass sheet, both laterally and longitudinally of the sunken portions, until the glass sheet has been depressed into the sunken portions throughout the area defined thereby."

Concerning this process patent, the District Judge said:

"I am of the opinion that the patent discloses nothing new. Any skilled glass worker would have adopted the same method, had occasion required. Moreover, the defendant does not infringe, because the use of the torch cannot be regarded as the same as the use of the poker."

Were we able to dispose of this question on noninfringement, we would do so. Unfortunately, however, we do not agree with the trial judge, and have been compelled to take up the issue of validity, with the result that, respecting this issue, we agree with the District Judge. Patentee was dealing with an old and well-developed art, the making of glass, and particularly the shaping of glass, so that plates with letters thereon could be satisfactorily made. The record is replete with instances of prior art, showing the formation of glass letters, of the production of glass tulip leaves, and the manufacture of lamp shades, or raised or curved letters.

Certainly "applying pressure to the glass sheet, both laterally and longitudinally of the sunken portions, until the glass sheet has been depressed into the sunken portions throughout the area defined thereby," does not of itself represent invention. Nor would the introduction of such a step in ordinary glass manufacture be a factor worthy of consideration. Briefly stated, patentee gave directions to heat glass over a die and see that the material filled the die completely. In view of the prior art, this was not invention.

[3] Appellant adopted as its trade-mark "Oplex." For many years this name has been used by it, and the Patent Office on December 16, 1913, issued its certificate of registration. Appellee selected as its advertising word "Opalite," and adopted the corporate name, the "Opalite Sign Company." One can hardly escape the impression that appellee's entry into this field, its adoption of this name, and its manufacture of appellants' patented product, were not in good faith. The District Court, however, has restrained certain of its unfair and unworthy practices, and we are called upon to determine whether "Opalite" infringes "Oplex." The District Judge said:

"The evidence disclosed that opal glass and opalescent were well-known descriptive terms for certain kinds of glass. In any event, 'Opalite' does not infringe upon plaintiff's trade-mark 'Oplex.'"

Without elaborating upon the reasons that support such a conclusion, we will conclude by saying that we are in accord with the views reached by the District Court, and that no infringement of the trade-mark is shown. This view is confirmed by the fact that complainant was unable to show any case of confusion in the trade.

Claims 1, 2, 3, 4, 5, 6, 7, and 11 of patent No. 1,224,253 are valid and infringed. Claims 8, 9, and 10 of the same patent are invalid. Claims 1, 2, and 9 of the process patent are invalid. Appellant's trademark, "Oplex," is not infringed by the use of appellee's name "Opalite."

The decree is reversed, with directions to enter a decree restraining the defendant from infringing claims 1, 2, 3, 4, 5, 6, 7, and 11 of patent No. 1,224,253, and for an accounting, provided, appellant within 90 days from the date hereof, files in the Patent Office a proper disclaimer of claims 8, 9, and 10 of the same patent. Appellant will recover no costs in this suit.